# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47777

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2021 Term |
| | ) | |
| v. | ) | Opinion filed: June 23, 2021 |
| | ) | |
| MELISSA KAY FOELLER, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Scott L. Wayman, District Judge.

The district court's order of restitution is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Kimberly Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Andrew Wake argued.

_____

MOELLER, Justice.

Melissa Kay Foeller ("Foeller") appeals a district court's order of restitution following her guilty pleas to two counts of grand theft and one count of tax evasion. She signed a plea agreement that stipulated she would pay restitution, as determined by the district court, in accordance with Idaho Code section 19-5304. On appeal, Foeller argues that the district court erred in ordering her to pay $535,952.87 in restitution to Travelers Casualty, her employer's insurer, because the court failed to adequately consider her foreseeable ability to pay that amount. Additionally, Foeller argues the district court abused its discretion in ordering her to pay $48,775 as restitution for back taxes to the Idaho State Tax Commission ("Tax Commission"). Foeller asserts the restitution amount was impermissibly speculative because it was based on an

1

estimate of her back taxes. Foeller also claims that taxes owed to the State of Idaho are future revenue, not compensable as an economic loss under section 19-5304(1)(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Foeller worked as a payroll accountant at Silverwood Theme Park ("Silverwood") for just under ten years. In 2019, she pleaded guilty to embezzling $528,611.11 between December 2013 and July 2017. A police investigation revealed Foeller, along with Silverwood's chief financial officer, Christopher Wyatt, began embezzling funds soon after her employment began in 2008, but she could only be charged for funds stolen during the previous five years. Foeller said she spent roughly 90 percent of the money to pay for her gambling addiction, mostly at a nearby casino.

The State initially charged Foeller with five counts of grand theft, one for each year she was charged with taking money from Silverwood. A Tax Commission employee read a media account of Foeller's case and suggested that the Commission look into Foeller's taxes. The inquiry revealed that, although Foeller had filed a 2013 tax return, she did not report the embezzled funds as income. Additionally, it was discovered that Foeller did not file any tax returns at all for the years 2014 through 2017. As a result of the tax investigation, the State amended Foeller's indictment, combining the grand theft charges into two counts (one for the period December 2013 to December 2015; one for the period January 2016 to July 2017) and adding a charge for tax evasion.

Foeller accepted a pre-trial plea agreement by which she agreed to plead guilty to the two charges of grand theft and one charge of tax evasion. Pursuant to the plea agreement, Foeller also agreed to pay restitution "[i]f applicable per statute." The district court imposed a unified sentence of fourteen years with three years fixed for each of the grand theft charges, and a unified sentence of five years with three years fixed on the tax evasion charge, with all three sentences to run concurrently. The State then filed a request for restitution in the following amounts: $535,952.87 to Travelers Casualty, the insurer that had covered Silverwood's embezzlement losses; $10,000 to Silverwood for the amount of its insurance deductible; and $48,775 to the Tax Commission based on the estimated amount Foeller had failed to pay in taxes, including on the embezzled funds, during the five years at issue.

At a subsequent restitution hearing, the parties stipulated to reduce Foeller's share of the restitution owed to Silverwood by $5,000, with Christopher Wyatt paying the remaining $5,000.

2

However, Foeller objected to the remaining restitution sought by the State. Although she did not challenge the accuracy of the amount Travelers Casualty was requesting, Foeller argued she should not be ordered to pay the full $535,952.87 because it was not foreseeable that she would ever be able to repay such a significant amount. Specifically, Foeller claimed she would be unable to pay the full restitution amount in the future because she was financially indigent, lacked other financial resources, might be getting divorced, would not be able to work as an accountant upon her release, and had a documented disability for various mental health disorders. Further, she averred that the interest which would accrue during her three-year incarceration would be "astronomical."

Foeller also objected to the $48,777 the State requested in restitution to the Tax Commission. First, she claimed that taxes do not satisfy the definition of "economic loss" under Idaho Code section 19-5304 because taxes are revenue and not an out-of-pocket expense. Second, she asserted that the requested amount due to the Tax Commission was based on an estimate rather than a tax assessment and, therefore, was impermissibly speculative.

The district court ruled from the bench, ordering the full amount of restitution requested by the State and ordering that interest begin to accrue from the date of the order. Regarding Foeller's future ability to pay restitution to Travelers Casualty, the district court stated, "because the defendant is not going to be incarcerated forever, the defendant does have the ability to earn money and does have the ability to pay some of this back at some point." The district court entered the restitution order, and Foeller timely appealed.

## II. STANDARD OF REVIEW

This Court reviews a district court's restitution order for an abuse of discretion, asking whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Garcia*, 166 Idaho 661, 681, 462 P.3d 1125, 1145 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III. ANALYSIS

### A. The district court did not abuse its discretion in ordering that Foeller pay $535,952.87 in restitution to Travelers Casualty.

Foeller claims that the district court abused its discretion in ordering her to pay Travelers Casualty, her employer's insurer, $535,952.87 in restitution because it did not adequately

3

consider her foreseeable ability to pay that amount in the future. The State responds by first asserting that this issue was not preserved because Foeller signed a plea agreement, which waived any issue regarding restitution except whether the award covers an "economic loss" under the statute. Second, the State contends that the district court adequately considered Foeller's ability to pay the restitution amount and that the district court's determination is supported by substantial evidence in the record.

1. **Foeller did not waive her right to appeal whether the district court adequately considered her ability to pay restitution.**

This Court analyzes the terms of a plea agreement as it would a contract; in so doing, it looks to the contractual terms of a plea agreement. *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005). "Interpretation of an unambiguous document is a question of law, reviewed de novo." *State v. Claxton*, 128 Idaho 782, 785, 918 P.2d 1227, 1230 (Ct. App. 1996). In general, "[a]n unambiguous contract will be given its plain meaning." *Credit Suisse AG v. Teufel Nursery, Inc.*, 156 Idaho 189, 196, 321 P.3d 739, 746 (2014) (quoting *Bakker v. Thunder Spring– Wareham, LLC,* 141 Idaho 185, 190, 108 P.3d 332, 337 (2005)). This Court must consider contractual terms that are expressly provided in the plea agreement, as well as those contractual terms that are implied. *State v. Doe*, 138 Idaho 409, 410–11, 64 P.3d 335, 336–37 (Ct. App. 2003).

Foeller signed a plea agreement in which she agreed to "[p]ay restitution/reimbursement: If applicable per statute: for all charges, even those dismissed." Idaho Code section 19-5304(2) provides in part, "[u]nless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim." Section 19-5304(7) articulates the requirements for considering whether restitution would be appropriate or desirable:

> The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of economic loss sustained by the victim as a result of the offense, *the financial resources, needs and earning ability of the defendant,* and such other factors as the court deems appropriate. *The immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution.*

(Emphasis added). According to the State, the contractual terms of Foeller's plea agreement that she pay any reimbursement "per statute" only allow her to appeal reimbursement that does not qualify as an "economic loss" under section 19-5304(1)(a). We disagree.

The most objective, plain reading of the term "per statute" in the plea agreement would be that the district court "shall consider" the statutory factors for assessing restitution. In other words, the reference to "per statute" unambiguously means that any restitution awarded must comply with the statute for restitution: section 19-5304. Foeller's plea agreement did not waive her right to appeal whether the district court adequately considered these factors and how they inform Foeller's ability to pay the restitution amount. Thus, the issue is properly before this Court on appeal.

### 2. The district court adequately considered Foeller's ability to pay restitution.

Foeller argues the district court abused its discretion when it order her to pay restitution to Travelers Casualty, her employer's insurer, in the amount of $535,952.87 because it failed to consider her foreseeable ability to repay such a substantial amount. The district court's only analysis of Foeller's ability to pay was to note, "because the defendant is not going to be incarcerated forever, the defendant does have the ability to earn money and does have the ability to pay some of this back at some point."

A district court's discretion in determining the appropriateness of restitution is guided by Idaho Code section 19-5304(7). *State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017). This section requires a district court to consider "the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate." I.C. § 19-5304(7). "The immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution." *Id.* To that end, a court may base restitution on a foreseeable ability to repay the amount ordered. *Wisdom*, 161 Idaho at 924, 393 P.3d at 584. "A district court's determination that a defendant has a foreseeable ability to repay the award is a factual finding that will not be disturbed on appeal if supported by substantial evidence." *Garcia*, 166 Idaho at 681–82, 462 P.3d at 1145–46.

We take this opportunity to note at the outset that criminal restitution has been elevated to a constitutional right in the state of Idaho. Idaho Constitution, Article 1, Section 22 provides a constitutional guarantee of the rights created by statute for victims of crimes, which includes that

5

victims are entitled "[t]o restitution, as provided by law, from the person committing the offense that caused the victim's loss." Thus, our analysis of whether the district court erred in determining Foeller could pay the restitution amount is not solely guided by the provisions of section 19-5304; we must also be mindful that crime victims have a constitutional right to restitution.

Foeller points to *Garcia*, for support. There, we overturned a restitution order because a trial court did not adequately consider a defendant's ability to pay $162,285.27 to the victims of his crimes. *Id.* at 681, 462 P.3d at 1145. Like the case at hand, the district court's analysis of Garcia's ability to pay consisted of a single sentence: "Having considered [Garcia's] economic circumstances, the Court concludes that an order of restitution is appropriate in this case." *Id.* at 682, 462 P.3d at 1146. However, this Court found no support in the record for the court's conclusion that Garcia would be able to pay that amount after serving a twenty-five year sentence. *Id.* at 682–83, 462 P.3d at 1146–47. Garcia had no education and no assurance of employability. *Id.* Although the district court obliquely acknowledged the proper factors in determining restitution under section 19-5304(7), we concluded it had abused its discretion and, accordingly, overturned the restitution order. *Id.*

Notwithstanding the similarity between the present case and *Garcia*—that the district court here dispensed with its analysis of Foeller's financial circumstances in a single sentence— we find two other cases more instructive in reviewing her financial circumstances and ability to pay restitution. In *State v. Bybee*, 115 Idaho 541, 768 P.2d 804 (Ct. App. 1989), the Court of Appeals reviewed a district court's restitution order in the amount of $1,628,738 to victims of the grand theft of precious metals. *Id.* at 542, 768 P.2d at 805. Bybee had used the value of precious metals owned by clients of his investment service to then engage in speculative trading, ultimately losing all of the clients' assets. *Id.* Although Bybee was sentenced to a fourteen-year indeterminate sentence, which would likely prevent him from making immediate payments and might affect his future employability, the Court of Appeals affirmed the restitution order. *Id.* at 543, 768 P.2d at 806. The Court of Appeals agreed with the district court that, even if it were likely Bybee could not work in investment services upon his eventual release, his business acumen signaled an intelligence and ability to work that supported finding he would eventually be able to pay restitution. *Id.*

6

In *Wisdom*, this Court reviewed a restitution order in the amount of $11,069.82. 161 Idaho at 916, 393 P.3d at 576. Despite the fact that Wisdom's job paid barely more than minimum wage, we affirmed the district court's restitution order based on Wisdom's ability to pay. *Id.* at 925, 393 P.3d at 585. The district court had considered Wisdom's circumstances by noting that her current income did not mean she would not earn more money in the future, at which point she would be able to "at least make some payment towards the restitution requested in the case." *Id.* at 924, 393 P.3d at 584. We agreed and further observed that Wisdom's foreseeable ability to pay restitution was supported by substantial evidence in the record— especially because she was only on probation and could continue her employment. *Id.*

In announcing its decision, the district court read from several relevant statutory provisions, including Idaho Code section 19-5304(7), and then, regarding Foeller's ability to pay, acknowledged only that she would eventually be released and that she "does have the ability to earn money" to pay at least part of the ordered restitution. Although the district court did not cite to specific information in the record or the presentence materials to support this assertion, the record contains an abundance of facts permitting both sides to argue for and against Foeller's ability to pay the restitution. For example, the record shows that Foeller is 45 years old, has a master's degree in accounting and taxation and a bachelor of science degree, is married (although potentially divorcing), has mental health issues, has been successfully treated in the past for mental health issues, and may be unemployable in her field as an accountant due to the nature of her crime.

Although the brevity of the district court's analysis gives us pause, we will not hold the district court abused its discretion based on the totality of the evidence in the record. Foeller appears to be asking this Court to require that a district court summarize *all* of the evidence in the record supporting an ability to pay in order to conclude a defendant has the foreseeable ability to pay before it may order restitution. Yet, neither the cases cited here, section 19-5304(7), nor Idaho's constitutional guarantee of a victim's right to restitution would support this conclusion. To the contrary, the statute provides that a present *inability* to pay does not prevent a court from awarding restitution. In *Garcia*, we overturned the restitution order because there was no evidence in the record to support the district court's conclusion that Garcia—lacking both education and employment—could pay restitution after twenty-five years of incarceration; thus, the district court did not adequately consider the factors required in section 19-5304(7). 166

Idaho at 682, 462 P.3d at 1146. However, Foeller's circumstances are not as dire. By contrast, she is facing a much shorter three-year fixed sentence. Upon release, she will have the advantage of an advanced degree. In *Bybee*, the Court of Appeals concluded that Bybee's business acumen indicated he had the ability to earn money, even if his crime made him unemployable in his field. The same is true of Foeller, who may not be employable as an accountant in the future, but whose education indicates that she is intelligent, proficient in accounting skills, and capable of earning significantly more than minimum wage. This is substantial evidence supporting the district court's finding—albeit a finding made without reference to specific facts—that Foeller has an above average ability to earn money upon her release. In *Wisdom*, we concluded that even minimum-wage employment could support the conclusion that a defendant had an ability to pay restitution. Similarly, Foeller does not need to be employed at the maximum of her earning potential in order to compensate the victims of her crime. Therefore, because we conclude that the district court did not abuse its discretion, we affirm the award of restitution to Travelers Casualty.

**B. The district court did not err when it ordered that restitution damages be paid to the Idaho State Tax Commission for back taxes.**

Foeller argues that the district court erred as a matter of law in ordering her to pay $48,775 in restitution to the Tax Commission for back taxes. First, Foeller asserts that taxes are not generally compensable as criminal restitution because taxes are future revenue and do not satisfy the definition of an economic loss under section 19-5304(2). Second, she contends the restitution amount awarded to the Tax Commission in this case was impermissibly speculative because it was based on an estimate that did not include her actual deductions. On appeal, Foeller expands this argument, claiming that the Idaho Income Tax Act, Idaho Code sections 63-3001-3087, provides the exclusive mechanism for the assessment and collection of taxes; therefore, she avers, the Legislature did not intend for back taxes to be awarded as an economic loss under the criminal restitution statute.

These are issues of statutory interpretation, which are questions of law over which this Court exercises free review. *State v. Dunlap,* 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). When interpreting a statute, this Court's objective is "to derive the intent of the legislative body that adopted the act." *Id.* (quoting *State v. Schulz,* 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). "Statutory interpretation begins with the statute's plain language." *Id*. The statute is considered as a whole, and words are given "their plain, usual, and ordinary meanings." *Id.* If the statute's

language is unambiguous, then this Court will give effect to the legislature's clearly expressed intent. *Id.* at 361–62, 313 P.3d at 17–18. Additional statutory construction is required, though, where the statute's meaning is ambiguous or is in conflict with other laws. *Arambarri v. Armstrong*, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012). This Court then considers the context of the language used, public policy surrounding the statute, and legislative history. *Id.*

### 1. Foeller's arguments related to the Idaho Income Tax Act are new on appeal; thus, they will not be considered.

As an initial matter, we address Foeller's argument that the Idaho Income Tax Act, set forth in chapter 30, Title 63 of the Idaho Code, is the exclusive mechanism for the assessment and collection of taxes. According to Foeller, the relevant tax code provisions were intended by the Legislature to be the sole method of collecting tax revenue, not a criminal restitution proceeding. She argues the legislative scheme precludes calculating and collecting taxes through criminal restitution. We conclude that this issue is new on appeal and has not been properly preserved for review.

"Issues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). This Court has acknowledged that arguments may "evolve" on appeal. *See State v. Hoskins*, 165 Idaho 217, 223, 443 P.3d 231, 237 (2019). In fact, we fully expect counsel to refocus and sharpen their arguments when they bring an appeal to this Court. However, that is not what occurred here; Foeller asks us to decide an issue that was never presented to the district court.

Foeller contends that she now cites to the Idaho Income Tax Act only as "supplemental statutory authority" to support her previous argument. However, her previous argument was altogether different from the issue she raises here. Before the district court, Foeller contended the amount she was to pay as restitution to the Tax Commission was impermissibly speculative *under the criminal restitution statute* because the amount of her back taxes was estimated. Now she argues that the Idaho Income Tax Act is the sole mechanism for calculating and collecting taxes, which precludes awarding back taxes as restitution. Further, she argues that the Tax Commission is not the kind of victim contemplated by the criminal restitution statute because the Tax Commission has independent statutory authority to pursue compensation. This is not a refocusing or sharpening of the argument presented below—it is a completely new theory. "[B]oth the

9

issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal." *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019); *see also State v. Wolfe*, 165 Idaho 338, 343, 445 P.3d 147, 152 (2019).

Inasmuch as the proper role of the Idaho Income Tax Act was not raised prior to this appeal, we decline to take it up now as it relates to criminal restitution. We will confine our analysis to the actual issue presented to the district court below, which is whether the tax calculation in this case satisfied the definition of an economic loss under the criminal restitution statute.

### 2. Foeller's back taxes qualify as an economic loss to the Tax Commission under the criminal restitution statute, Idaho Code section 19-5304.

According to Foeller, the Tax Commission is not a victim of her crime; rather, it is a "beneficiary" because it can assess taxes on the funds she embezzled. Foeller claims this makes the back taxes analogous to lost future profits, which are speculative, and not an "economic loss which the victim actually suffers" as defined in section 19-5304(2). The criminal restitution statute states in part:

> Unless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim. . . . Restitution shall be ordered for any economic loss which the victim actually suffers. . . .

I.C. § 19-5304(2). The statute further defines "economic loss" as follows:

> "Economic loss" includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress.

I.C. § 19-5304(1)(a).

Foeller cites this Court's decision in *State v. Straub*, 153 Idaho 882, 292 P.3d 273 (2013), in which we determined that lost future earnings are not compensable under the criminal restitution statute. Straub was found guilty of vehicular manslaughter and appealed from a district court order that he pay restitution damages for the victim's lost future wages. Straub argued that future wages are speculative and are, therefore, not included in section 19-5304, which only covers actual losses. *Id.* at 889, 292 P.3d at 280. In support, Straub noted that in a civil action, damages for lost future earnings would have to be established with reasonable

10

certainty; however, the criminal restitution statute only requires that economic losses be established by a preponderance of the evidence. *Id.* This Court agreed that, because future wages are speculative, they are not included in the definition of "economic loss" under section 19-5304(1)(a):

> The restitution statute was never meant to be a substitute for a civil action where the law is settled as to damages and the quantum of admissible proof needed to prove those damages. If we allow all foreseeable damages to be clothed in criminal restitution, we will draw to a standstill an already overburdened criminal court process. Prosecutors and criminal defense attorneys would then have to engage in civil discovery and trials of a civil nature on top of already complex criminal procedure and trials. Since the restitution order awarded speculative future wages and other expenses rather than direct out-of-pocket expenses actually suffered we find that the restitution order is not consistent with I.C. § 19–5304.

*Id.* at 890, 292 P.3d at 281. Foeller argues the restitution awarded to the Tax Commission for estimated unpaid taxes is analogous to the lost future wages in *Straub*—speculative and not related to a direct out-of-pocket expense. Therefore, she claims, the estimated taxes may not be collected through criminal restitution.

We cannot agree that the tax calculation in this case is too speculative to be awarded as criminal restitution, nor can we conclude that the unpaid taxes represent lost future profits as opposed to an economic loss the Tax Commission—and by extension, Idaho citizens—"actually suffered." In *Straub*, we considered that prospective wages are simply inapposite to losses that are "actually suffered" as the restitution statute requires because they are, by definition, a *future* loss. By contrast, Foeller failed to pay taxes for five years *in the past*. The amount of putative income on which she did not pay taxes is known. The amount of Foeller's Silverwood salary, coupled with the additional money she embezzled, allowed the Tax Commission to estimate with a reasonable degree of certainty the tax Foeller should have paid. In other words, the amount of lost tax revenue the Tax Commission has actually suffered can be established without undue speculation. Foeller was free to rebut these calculations at the restitution hearing, but failed to do so.

As noted previously, inasmuch as Foeller did not raise the question of whether the restitution statute is in conflict with the Idaho Income Tax Act before the district court, we observe from the record that it is common practice for the Tax Commission to calculate an individual's taxes in order to discern whether a deficiency or overpayment exists. The failure to

11

file tax returns and pay required taxes may necessitate the Tax Commission calculating taxes on a person's behalf, which may not include every possible deduction. At the restitution hearing, Kristin Lewis ("Lewis"), a tax audit manager from the fraud and criminal investigations unit of the Idaho State Tax Commission, testified that she was able to determine the amount of income Foeller had failed to report from 2013 to 2017 and the associated taxes due. Lewis stated that the Tax Commission relied on Foeller's W-2s issued by Silverwood, as well as "the additional income she received without the knowledge of Silverwood" in order to complete tax returns that then showed the taxes Foeller should have paid. Lewis acknowledged that the Tax Commission did not know Foeller's actual deductions and instead gave her the standard deduction and one exemption for each of the years at issue—as is the Tax Commission's common practice.

To be clear, neither the Tax Commission nor the people of Idaho were "beneficiaries" of Foeller's illegal acts, as argued by Foeller—they suffered an actual loss. Thus, an award of restitution was proper. We have little sympathy for Foeller's contention that she was entitled to more deductions when she did not bother to file her returns and claim those deductions. Foeller chose to evade taxes for five years, and as a result the Tax Commission completed the tax forms she did not. We will not conclude this renders the calculated tax debt, which was not rebutted by Foeller, unduly speculative. Accordingly, we affirm the decision of the district court to award the Tax Commission $48,775 in restitution.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order awarding restitution of $535,952.87 to Travelers Casualty and $48,775 to the Idaho State Tax Commission.


Chief Justice BEVAN, and Justices BURDICK, BRODY and STEGNER **CONCUR.**

12