**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 48891/48892**

| | |
|---|---|
| STATE OF IDAHO, )<br>)<br>        Plaintiff-Respondent, )<br>)<br>v. )<br>)<br>KEAREN R. YOUNG, )<br>)<br>        Defendant-Appellant. )<br>) | **Filed: November 28, 2022**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

Judgment of conviction for vehicular manslaughter and aggravated driving under the influence of alcohol, drugs, and/or an intoxicating substance, <u>affirmed</u>; order of restitution, <u>affirmed</u>; and order denying Idaho Criminal Rule 35 motion, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Kearen R. Young appeals from the district court's judgment of conviction for vehicular manslaughter, Idaho Code § 18-4006(3)(b), and aggravated driving under the influence of alcohol, drugs, and/or an intoxicating substance, I.C. § 18-8006, and order of restitution. Young alleges the district court abused its discretion by imposing an excessive sentence, denying her Idaho Criminal Rule 35 motion for a reduction of sentence, and failing to consider her future ability to pay the amount of restitution ordered. Because the district court did not abuse its discretion in its sentencing determination, its denial of Young's I.C.R. 35 motion, or its order of restitution, the judgment of conviction, the order denying Young's I.C.R. 35 motion, and the restitution order are affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontested on appeal. While driving under the influence of alcohol, Young turned left in front of an oncoming motorcycle. The motorcycle struck Young's car and Albert Galli, the motorcycle driver, and his wife, Amy Galli, the motorcycle passenger, were seriously injured. Young left the scene. Shortly thereafter, a law enforcement officer and Young made contact; Young submitted to alcohol testing of her breath which registered a breath alcohol concentration of .272, .241, and .250. The State charged Young with two counts of aggravated driving under the influence, I.C. § 18-8006, and one count of leaving the scene of an injury accident, I.C. § 18-8007, all felonies. Approximately two months after the accident, Albert died at the hospital from complications related to the crash. As a result, the State charged Young with vehicular manslaughter, I.C. § 18-4006(3)(b), a felony, in a separate criminal case.

Pursuant to a plea agreement resolving the charges in both cases, Young pleaded guilty to vehicular manslaughter and one count of aggravated driving under the influence. Young agreed to pay restitution and child support for Albert's minor children. The parties agreed to jointly recommend that Young's aggregate sentence not exceed twenty years, and the State dismissed the remaining charges. The district court sentenced Young to fifteen years, with five years determinate, for vehicular manslaughter and a five-year determinate sentence for aggravated driving under the influence with the sentences to run consecutively. The district court left restitution open for sixty days.

The State filed a memorandum requesting restitution for the victims' economic losses pursuant to I.C. § 19-5304 (economic loss restitution) and an order for child support pursuant to I.C. § 18-4007(3)(d) (child support restitution). The district court held a restitution hearing. The district court found that Amy and GEICO[1] were victims of Young's crimes and ordered Young to pay Amy $21,454.00 and GEICO $14,859.36 for the economic losses incurred as a result of the accident. Additionally, the district court ordered Young to pay $209.00 a month for child support to Amy until her and Albert's youngest child turned eighteen.

Subsequently, Young filed an I.C.R. 35 motion, requesting the district court reduce her determinate sentences to reflect the positive changes she made in her life, allow her to care for her

---

[1]     GEICO paid $14,859.00 when the motorcycle was totaled as a result of the accident.

2

elderly parents, and begin working toward paying back the ordered restitution and child support. The district court found that its previously imposed sentences were reasonable and denied Young's I.C.R. 35 motion. Young timely appeals.

## II.

## STANDARD OF REVIEW

A trial court's imposed sentence, denial of an I.C.R. 35 motion, and order of restitution are discretionary decisions. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000); *State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct. App. 1991); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Young argues the district court abused its discretion by imposing an excessive sentence and denying her I.C.R. 35 motion. Young also argues the district court abused its discretion by failing to consider her future ability to pay the amount of restitution ordered and that the totality of the evidence presented in the presentence materials do not support a conclusion that Young has a foreseeable ability to repay the restitution after release from incarceration. In response, the State argues the district court did not err.

### A. The District Court Did Not Abuse Its Sentencing Discretion

Young asserts that in light of the mitigating factors present in this case, the district court abused its discretion by imposing excessive sentences. Specifically, Young argues that her devotion to her family, church, and community; her remorse for her actions; her changes in her lifestyle; and her desire to work to pay restitution and child support to the victims of her crimes make the sentences imposed unreasonable under any view of the facts of the case.

An appellate review of a sentence is based on an abuse of discretion standard. *Burdett*, 134 Idaho at 276, 1 P.3d at 304. Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393,

825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).

A sentence need not serve all the sentencing goals or weigh each one equally. *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct. App. 1993). The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel*, 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson*, 124 Idaho 179, 857 P.2d 658 (Ct. App. 1993).

Here, the district court did not abuse its discretion in imposing Young's sentences. The district court acknowledged it had discretion in imposing a sentence and identified the factors that guide its discretion. The district court understood the statutory range of sentences available for Young's crimes and the sentences imposed are within the statutory range.[2] Additionally, upon review of the record, the sentences imposed are not excessive given consideration of the nature of the offense, character of the offender, and protection of the public interest.

While Young has expressed remorse, articulated a desire to take accountability for her actions, and taken some steps to make changes, these facts do not render the district court's sentences excessive. Prior to the current conviction, Young had three previous convictions for driving under the influence. In two of those cases, Young's blood alcohol concentration approached or was over .20 and she fled the scene. These convictions did not act as a deterrent to

---

[2] Vehicular manslaughter and aggravated driving under the influence each carry a statutory range of up to fifteen years of incarceration. I.C. § 18-4007(3)(b); I.C. § 18-8006(1)(a).

Young because, in this case, Young again drove under the influence with testing indicating a blood alcohol concentration of .272/.241/.250. While driving under the influence, Young turned left in front of an oncoming motorcycle, causing the motorcycle to crash into the side of her car and the Gallises were launched over Young's vehicle and landed on the roadway. While the Gallises lay unconscious and/or unresponsive, Young left the scene. Young's actions caused significant injury to each of the Gallises. Amy fractured her T-7 vertebrae, broke her rib, and had a mild brain injury. Albert broke his neck, had a brain injury, and ultimately died from complications of his injuries, leaving his children without a father.

Driving under the influence of alcohol poses a significant public safety concern. Given Young's history of driving while under the influence of alcohol, the impact of Young's actions upon the Gallises and their children, and the need to impose a sentence that both punishes Young's behavior in this case and deters future similar behavior, we decline to hold that Young's sentences of fifteen years, with five years determinate, for vehicular manslaughter and five years determinate for aggravated driving under the influence, are unreasonable under any view of the facts. Accordingly, the district court did not abuse its sentencing discretion.

**B.      The District Court Did Not Abuse Its Discretion by Denying Young's I.C.R. 35 Motion**

Young argues the district court abused its discretion by denying her I.C.R. 35 motion in light of the evidence presented at the motion hearing.[3] A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (1989). In presenting an I.C.R. 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of an I.C.R. 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

---

[3]      The State argues that Young waived her ability to file an Idaho Criminal Rule 35 motion as part of her plea agreement. The State did not raise this claim to the district court in response to Young's I.C.R. 35 motion. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Accordingly, we will not address this issue further.

5

At the I.C.R. 35 motion hearing, Young testified that she believed the district court should reduce the determinate length of her prison sentence because, since the imposition of her sentence, she maintained sobriety, requested a transfer to a facility with a work center where she can be more productive, began an Alcoholics Anonymous self-study program, and enrolled in mindfulness and grief classes. Young further emphasized that she does not believe that she is a threat to the community, she has good family support, and she had not received any disciplinary offenses while incarcerated. Finally, Young testified that she wants to be able to be released from prison earlier so she can care for her elderly parents and work towards paying her restitution and child support obligations to the victims in the case.

While Young's good behavior and sobriety during her incarceration are admirable, they are also expected. As such, Young's behavior during the time she spent incarcerated does not establish that her sentences are excessive. At the sentencing hearing, the district court considered Young's presentence investigation report which detailed the support she receives from family and friends. Young expressed her remorse and desire to pay restitution prior to sentencing. Thus, Young's additional testimony as to these issues at the I.C.R. 35 motion hearing did not constitute new information that would render her sentences excessive. The district court acted within its discretion and consistent with legal standards when it denied Young's I.C.R. 35 motion and, accordingly, did not err.

C.     The District About Did Not Abuse Its Discretion in Its Restitution Order

Young argues the district court abused its discretion by ordering that she pay Amy $21,454.00 and GEICO $14,859.36 in restitution for the economic losses they sustained as a result of her criminal conduct.[4] While Young concedes these restitution amounts accurately represent the economic losses the victims incurred as a result of her actions, she asserts that when the district court ordered restitution, it "did not address [her] future ability to pay *at all*" and, as such, the court failed to reach its decision through an exercise of reason. Second, Young argues the totality of the evidence presented in the presentence materials do not support a conclusion that she has a foreseeable ability to repay the restitution after release from prison. In support of her arguments, Young cites *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020) (*Garcia I*). While the State "concedes that the district court could have been more explicit in its analysis of Young's

_____

[4]     Young does not challenge the district court's child support order on appeal.

6

foreseeable ability to pay," it argues the court nonetheless "adequately addressed the issue and the record supports its (at least implicit) finding."

### 1. The district court considered Young's future ability to pay the restitution ordered

Idaho Code § 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *Bybee*, 115 Idaho at 543, 768 P.2d at 806. Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796.

Pursuant to I.C. § 19-5304, which governs economic loss restitution for crime victims:

> Unless the court determines that an order of restitution would be inappropriate or undesirable, it shall order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim. An order of restitution shall be a separate written order in addition to any other sentence the court may impose, including incarceration, and may be complete, partial, or nominal.

I.C. § 19-5304(2). While I.C. § 19-5304 expressly authorizes a restitution award for the full amount of a victim's economic loss, that authority is bounded by certain considerations. In determining whether to order restitution and the amount of restitution to award, a trial court:

> shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate. The immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution.

I.C. § 19-5304(7). Thus, the Idaho Supreme Court has held that "a [trial] court may order restitution based on a foreseeable ability to repay the award." *State v. Wisdom*, 161 Idaho 916, 924, 393 P.3d 576, 584 (2017). A district court's determination that a defendant has a foreseeable ability to repay the award is a factual finding that will not be disturbed on appeal if supported by substantial evidence. *Garcia I*, 166 Idaho at 681-82, 462 P.3d at 1145-46.

In *Garcia I*, the district court ordered Garcia to pay $162,285.27 in restitution. *Id.* at 682, 462 P.3d at 1146. The district court's analysis of Garcia's future ability to pay the restitution consisted of one sentence: "Having considered [Garcia's] economic circumstances, the Court concludes that an order of restitution is appropriate in this case." *Id.* The Idaho Supreme Court

held the district court abused its discretion in two ways. First, the district court failed to recognize the outer boundaries of its discretion in failing to identify the proper standard: i.e., it did not recognize the difference between Garcia's immediate inability to pay the restitution award and his foreseeable ability to pay the restitution award. *Id.* Second, the district court failed to show an exercise of reason when it limited its analysis of Garcia's future ability to pay to the one sentence set forth above. *Id.* Noting that a district court is not required to "divine a defendant's future financial capabilities" or "limit a victim's right to restitution to what is presently known about the defendant," the Court held that pursuant to I.C. § 19-5304(7), a court must provide some analysis concerning a defendant's future ability to pay a restitution award in order to reach its decision through an exercise of reason. *Garcia I*, 166 Idaho at 683, 462 P.3d at 1147. The Court held the district court abused its discretion in ordering the amount of restitution because it did not "address Garcia's future ability to repay *at all*." *Id*. (emphasis added). The Court remanded the case for a restitution order consistent with its opinion. *Id.*

Following remand, the district court held another evidentiary hearing, found Garcia had the future ability to pay the restitution, and ordered restitution in the amount of $162,285.27. *State v. Garcia*, 170 Idaho 708, 711, 516 P.3d 578, 581 (2022) (*Garcia II*). Garcia appealed and the Idaho Supreme Court affirmed the restitution award, finding there was substantial and competent, albeit conflicting, evidence regarding Garcia's future ability to pay the restitution. *Id*. at 707, 516 P.3d at 585. First, the Court concluded the district court erroneously found that Garcia had made progress paying down the restitution amount ordered because the payments Garcia made from his garnished wages were not keeping up with the interest accruing on the restitution. *Id*. However, the Court went on to conclude that substantial and competent evidence supported the district court's conclusion regarding Garcia's future ability to pay restitution because the court properly considered the other I.C. § 19-5305(7) factors. *Garcia*, 170 Idaho at 707, 516 P.3d at 585. The Court specifically noted that the district court considered the economic losses sustained by the victims as a result of Garcia's offenses; Garcia's financial resources, needs upon release, and earning ability to repay the restitution amount; Garcia's positive pre-incarceration employment history in the trailer manufacturing industry; his potential employment capacity in the same or similar industry upon release; the educational and vocational opportunities available to Garcia to increase his employability and earning capacity before release; and the lack of evidence that Garcia had any impairments, mental or physical, that would adversely impact his employability or ability

8

to perform work in the future.  *Id.*  Accordingly, the Court affirmed the district court's restitution order.  *Id.*

Although Young relies on *Garcia I* to support her argument that the district court did not address Young's future ability to pay the restitution, we find *State v. Foeller*, 168 Idaho 884, 489 P.3d 795 (2021) more analogous to the facts of this case.  In *Foeller*, pursuant to a plea agreement, Foeller pleaded guilty to two counts of grand theft and one count of tax evasion; she also agreed to pay restitution "if applicable per statute."  *Id.* at 886, 489 P.3d at 797.  The State sought restitution on behalf of the victims of Foeller's crimes, including $535,952.87 to Travelers Casualty.  *Id.* at 886, 489 P.3d at 797.  Foeller did not challenge the accuracy of the amount owed to Travelers Casualty, but argued that she should not be ordered to pay the full amount because she lacked a future foreseeability to pay the restitution based on her indigency, her lack of other resources, her inability to work as an accountant upon her release from prison, a documented disability for mental health issues, and the fact that the interest accrual during her three-year incarceration would be "astronomical."  *Id.* at 887, 489 P.3d at 798.

The district court ordered Foeller to pay the $535,952.87 restitution to Travelers Casualty.  *Id.*  The district court's analysis of Foeller's future ability to pay the restitution consisted of the following sentence:  "[B]ecause the defendant is not going to be incarcerated forever, the defendant does have the ability to earn money and does have the ability to pay some of this back at some point."  *Id.*  Foeller appealed.  *Id.*

The Idaho Supreme Court affirmed the district court's restitution award.  The Court first noted that restitution "has been elevated to a constitutional right in the state of Idaho."  *Id.* at 888, 489 P.3d at 799.  The Court then distinguished *Foeller* from *Garcia I*, noting that although the district court's analysis of Foeller's future ability to pay restitution consisted of only one sentence, and the court did not cite to specific information in the record or the presentence materials to support its assertion that Foeller had the ability to earn money, "the record contain[ed] an abundance of facts permitting both sides to argue for and against Foeller's ability to pay the restitution."  *Id.* at 889, 489 P.3d at 800.  The Supreme Court concluded that there was substantial evidence supporting the district court's finding that Foeller had the ability to repay the restitution upon her release, even though the finding was made without reference to specific facts.  *Id.* at 890, 489 P.3d at 801.

Here, like *Foeller*, Young agreed, pursuant to her plea agreement, to pay restitution "if applicable per statute." Also similar to *Foeller*, Young concedes that Amy and GEICO were victims under the restitution statute, their economic losses were a result of her criminal conduct, and the restitution amounts ordered by the district court accurately represent their economic losses.[5] During the restitution hearing, Young's trial counsel argued the restitution in this case falls into two categories: (1) economic loss restitution pursuant to I.C. § 19-5304; and (2) child support restitution for Albert's children pursuant to I.C. § 18-4007. Young's trial counsel cited to I.C. § 19-5304(7), listed the factors the district court should consider, and argued that his only objection to restitution was that Young did not have either an immediate or long-term ability to pay the restitution based on the length of her prison sentence. However, Young's counsel then stated that "a lot" of the restitution for the victims' economic losses would be paid by Young's insurance:

> Your Honor, finally, just with respect to the civil case, I want to let the court know that's still ongoing. I anticipate that once the insurance companies figure out whether Ms. Young's employer or Ms. Young's auto insurance, who is going to pay what, a lot of this is going to be satisfied out of--at least--not the child support amounts, but the economic out-of-pockets. We'll be filing, you know, a motion for partial satisfaction of judgment, or whatever. That hasn't occurred yet, but it should occur soon.

Thus, although Young's counsel argued that while Young did not have the immediate ability to repay the restitution for the victims' economic losses, he also acknowledged Young's insurance would soon have the ability to pay "a lot" of the restitution and that the payment would be credited to Young. We see no meaningful distinction between Young herself paying restitution or Young's insurance paying the restitution because, in either event, the payment is credited against Young's legal obligation to pay restitution. Thus, the district court could properly consider the payment--whether from Young or Young's insurance--as supporting a conclusion that Young had the future ability to pay the restitution.

Subsequently, in its oral decision, the district court explicitly addressed Young's immediate inability to pay, finding the order:

---

[5] Young challenged the inclusion of prospective expenses in the State's restitution calculations for Amy as such expenses did not represent a loss Amy actually incurred. The district court agreed with Young's challenge and, accordingly, its restitution award did not include the challenged $300 prospective expense.

10

takes into account that Ms. Young is incarcerated and doesn't have the means to satisfy presently some of the debts and certainly not to satisfy them in--very quickly over the course of the next few years. I do recognize that she may have some income that she might earn while she's in custody. I also recognize that it would be very low income and I don't know how much would be available to pay any debts.[6]

Thus, like *Foeller*, but unlike *Garcia I*, here, the district court addressed both Young's immediate and future ability to pay her "debts," i.e., both economic loss and child support restitution and that Young had the future ability to earn an income, albeit a low one. Thereafter, the district court stated it would be awarding restitution "using the information that I got here in the hearing today." That information included both the information that Young would be credited with paying "a lot" of the economic loss restitution in the near future and the information regarding the child support calculation. The record also indicates the district court considered Young's future ability to pay the economic loss restitution because the district court stated it would set out the amount of restitution for the victims' economic losses and the child support "separately and put a little bit of detail into the calculation of the amounts so that when and if there are payments made from the insurance company, they can be credited if appropriate to the amounts that are setout."

It is true that the district court's findings are not as extensive as those in *Garcia II*, but precedent does not require the district court to make such extensive findings in order to uphold a restitution order. Moreover, like in *Garcia II*, the district court considered the economic losses sustained by the victims as a result of Garcia's offenses based on Young's concession that Amy and GEICO were victims pursuant to the statute and that the amount of restitution represented their economic loss. Similarly, and as noted above, the district court considered Young's financial resources and her earning ability to repay the restitution amount. Finally, there was evidence presented that Young did not have any impairments, mental or physical, that would adversely impact her employability or ability to perform work in the future. Although more limited than the findings in *Garcia II*, the record here does not support a conclusion that the district court did not

---

6    While the transcript may be read that the district court's comments were referring to the child support restitution award, the district court used the word "debts," which would encompass both the child support restitution and the economic loss restitution. Moreover, even if this statement applied only to one category of the restitution award, the reasoning similarly applies to the economic loss restitution. Young cites no authority that the district court was required to provide separate reasoning for the imposition of each type of restitution, and we decline to impose such a requirement.

address Young's future ability to pay restitution "at all." Instead, consistent with precedent, the district court provided some, albeit limited, analysis concerning Young's future ability to pay the restitution award and, thus, reached its decision through an exercise of reason.

In light of the facts of this case, a crime victim's constitutional right to restitution, and the controlling precedent, we conclude that the district court sufficiently analyzed and addressed Young's immediate inability and foreseeable future ability to pay restitution. Accordingly, the district court did not abuse its discretion in ordering restitution.

### 2. The district court's finding that Young has the future ability to pay restitution after release from incarceration is supported by substantial and competent evidence

The district court addressed Young's immediate inability and foreseeable future ability to pay restitution and then ordered restitution. Like in *Foeller* and *Garcia II*, the district court's finding that Young has the future ability to pay restitution for the economic losses the victims sustained as a result of Young's criminal conduct is supported by substantial and competent evidence in the record and in the presentence materials.

First, the appellate record was augmented by order of the Idaho Supreme Court to include a satisfaction of judgment, filed by Amy Galli, which indicated Young's $21,454.00 restitution award owing to Amy had been paid. The satisfaction of judgment was filed on July 20, 2022, approximately eleven months after the restitution order was filed on August 31, 2021. This document corroborates trial counsel's representation that a lot of the restitution would "soon" be paid by Young's insurance. Second, the amount of the remaining economic loss restitution Young owes is the $14,859.36 owed to GEICO--a significantly lesser amount of restitution than the $162,285.27 at issue in *Garcia* or the $535,952.87 owed in *Foeller*. While the amount at issue does not negate the requirement to address a defendant's future ability to pay, it is nonetheless a factor the trial court can consider. Third, the presentence materials indicate that Young has a high school diploma and an Associate of Arts degree, as well as linguistic and hospitality certificates. Young further listed her job skills and experience as a "CNA (Nurse asst.)--Airline--Industry Hospitality, tutoring, wholesale/Retail Sales in fashion design." Young indicated that she was receiving monthly disability income from the Social Security Administration but did not specify for what diagnosis. Many letters were submitted in support of Young; some indicated she was dependable, conscientious, and hardworking, characteristics that enhance her ability to obtain and maintain employment upon her release from prison. One letter further indicated that Young

12

"excelled" in her career and had worked both as a flight attendant and as a caregiver in the health care field. Nothing in the presentence materials suggest employment opportunities would not be available upon Young's release from incarceration or that she would otherwise be unable to repay the remaining $14,859.36 of restitution.

Thus, the district court's finding that Young had the future ability to pay restitution is supported by substantial and competent evidence.[7] As such, we decline to find that the district court's conclusion was not reached by an exercise of discretion and, consequently, the court did not abuse its discretion in ordering restitution.

## IV.
## CONCLUSION

The district court did not abuse its discretion by imposing an excessive sentence, denying Young's I.C.R. 35 motion, or ordering restitution. Accordingly, the judgment of conviction, order denying Young's I.C.R. motion, and order of restitution are affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

---

[7] Even if this Court concluded that after analyzing Young's future ability to pay the restitution, the district court did not make an explicit finding, the district court made an implicit finding that Young had the foreseeable future ability to repay restitution by addressing Young's ability to pay her "debts" and then imposing restitution. In the absence of an explicit finding, we will review the record to determine what finding is implicit in the trial court's order. *State v. Welker*, 129 Idaho 805, 808, 932 P.2d 928, 931 (Ct. App. 1997). We defer to implicit findings of fact supported by substantial and competent evidence. *See id.* As discussed above, the record provides substantial and competent evidence to support the district court's finding--either explicit or implicit--that Young had the foreseeable future ability to pay restitution.

13