# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50538-2023

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2023 Term |
| | ) | |
| v. | ) | Opinion filed: June 6, 2024 |
| | ) | |
| PETER FRANKLIN GOULLETTE, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara A. Buchanan, District Judge.

The judgment of conviction is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Andrea Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Justin Porter argued.

---

ZAHN, Justice.

This case arises from Peter Franklin Goullette's conviction for felony vehicular manslaughter. Goullette entered a guilty plea while maintaining his innocence, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Goulette appeals from his judgment of conviction, primarily arguing that the district court abused its discretion when it accepted his guilty plea because it failed to inquire into the factual basis of his guilty plea. For the reasons discussed below, we hold that the district court did not err in accepting Goullette's *Alford* plea because the record as a whole demonstrates that Goullette entered a knowing, voluntary, and intelligent plea. We also hold that the district court did not err by failing to revisit the validity of Goullette's plea at sentencing because the district court was not presented with evidence raising an obvious doubt as to Goullette's guilt.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One day in June 2016, Goullette was driving south on McGee Road with his child in the backseat. Goullette's girlfriend followed behind him in a different vehicle. A neighbor testified that Goullette and his girlfriend were driving their vehicles southbound on McGee Road at high rates of speed. Meanwhile, Zualita Updike and Kathy Stelzer were walking on McGee Road with their backs to oncoming traffic in the southbound lane.

Lori Stone was driving northbound on McGee Road. Stone saw Updike and Stelzer walking south on McGee Road in the southbound lane. As she drove north on McGee Road, Stone testified that she saw Goullette rapidly traveling south on McGee Road. As Goullette approached Stone, she witnessed Goullette's vehicle cross over the center line and testified that Goullette was not looking at the roadway.

Shortly thereafter, Goullette struck Updike and Stelzer from behind, killing Stelzer and severely injuring Updike. Goullette admitted to officers that he heard his four-year-old son unbuckle his seatbelt in the backseat and that he had turned around and was attempting to buckle his son back in when he struck the victims.

McGee Road is a largely straight road with a speed limit of twenty-five miles per hour. Law enforcement prepared incident and accident reconstruction reports, although these reports are not in the record. The appellate record indicates that the incident and accident reconstruction reports concluded that Goullette was traveling at approximately forty-three miles per hour just before the collision and approximately thirty-five miles per hour at the estimated point of impact.

The State filed a criminal complaint charging Goullette with vehicular manslaughter and reckless driving. After a preliminary hearing, Goullette was bound over to the district court. The State then filed an Information alleging two counts: (1) vehicular manslaughter pursuant to Idaho Code sections 49-1401(1) and 18-4006(3)(a) for striking and killing Stelzer, and (2) reckless driving pursuant to Idaho Code section 49-1401(1) for striking and injuring Updike.

At his arraignment, Goullette entered pleas of not guilty to both charges. Several months later, Goullette entered a change of plea. Prior to formally entering the plea, he filled out and signed a "Guilty Plea Advisory and Form," indicating that he intended to plead guilty to both counts pursuant to the United States Supreme Court's decision in *North Carolina v. Alford*, 400 U.S. 25 (1970). "An *Alford* plea is a plea where a criminal defendant pleads guilty on the basis that sufficient evidence exists with which the prosecution could establish its case, but the defendant

maintains innocence." *State v. Easley*, 156 Idaho 214, 217 n.1, 322 P.3d 296, 299 n.1 (2014). Goullette also signed an "Acknowledgement of Alford Plea," in which his initials appear next to a statement acknowledging that the district court must find "[t]hat there exists a strong factual basis to support the guilty plea[.]"

At his change of plea hearing, the district court asked Goullette if he agreed that there was a strong factual basis to support his guilty plea and Goullette responded affirmatively:

> Q. [District Court] And you're entering what's called an Alford plea. An Alford plea, by doing this you're agreeing that there's a strong factual basis to support a guilty plea.
>
> And you're asking the Court to enter the plea for you so that you can take advantage of the offer that the [S]tate has made in all of your pending cases, is that true?
>
> A. [Goullette] Yes, ma'am.
>
> Q. And you understand that when you're sentenced, even though you haven't said you're absolutely guilty and entered the guilty plea, you'll be sentenced by me as if you pled guilty?
>
> A. Yes, ma'am.
>
> Q. Do you want to go forward today and enter what is called an Alford plea to the charge of vehicular manslaughter?
>
> A. Yes, ma'am.
>
> Q. And also to the charge of reckless driving?
>
> A. Yes, ma'am.

The district court did not ask any further questions or state any conclusions on the record regarding the factual basis supporting Goullette's pleas. The district court proceeded to accept Goullette's pleas, finding that they were "knowingly and voluntarily made with a full understanding of the potential consequences."

Nearly two months later, Goullette appeared for sentencing. Prior to sentencing Goullette filed an expert report by William Skelton, an engineer with experience in accident reconstruction, for the district court's consideration at sentencing. In the report, Skelton concluded (1) that the large braking skid marks near the area of impact were not caused by Goullette's vehicle because it was equipped with an anti-lock brake system; (2) that Goullette's vehicle's height and scuff marks on the road indicated that it was "quite probable" that the victims became entangled and were carried by Goullette's vehicle; (3) that, if the victims were carried, law enforcement's reliance on the distance between the point of impact and the final resting spot of one of the victim's bodies

3

would be inaccurate for purposes of calculating Goullette's speed for the accident reconstruction report; (4) that Goullette's approximate speed at the estimated point of impact was 26.5 miles per hour; (5) that Goullette did not have enough time to avoid hitting the victims; and (6) that the victims were not in compliance with Idaho law because they were walking on the wrong side of the road.

At Goullette's sentencing hearing, Goullette's attorney stated that "we don't agree that this is gross negligence" and discussed several mitigating factors, including that the Skelton Report disputed the State's version of events. The district court stated that it had reviewed some documents in the record, including the Skelton Report. The district court discussed the sentencing factors set forth in Idaho Code section 19-2521 and sentenced Goullette to a fixed ten-year sentence. Goullette's attorney did not file a notice of appeal or a motion for reduction of sentence pursuant to Idaho Criminal Rule 35 and later withdrew as counsel.

About one year later, Goullette filed a pro se petition for post-conviction relief, arguing, among other things, that he was provided ineffective assistance of counsel because his attorney did not file a direct appeal contrary to Goullette's request. *See Goullette v. State*, No. 47576, 2021 WL 807882, at *1 (Idaho Ct. App. Mar. 3, 2021) (unpublished). The district court denied Goullette's petition, but the Court of Appeals reversed and remanded for the district court to consider Goullette's petition for post-conviction relief based on ineffective assistance of counsel. *See generally id.*

On remand, the district court granted Goullette's petition for post-conviction relief. The district court vacated Goullette's original judgment of conviction and ordered that an amended judgment be entered to provide Goullette with an opportunity to directly appeal his conviction. Goullette timely appealed, arguing that the district court abused its discretion because it failed to inquire into the factual basis of his guilty plea (1) when it was first entered and (2) at his sentencing hearing. *See State v. Goullette*, No. 48904, 2022 WL 16730052 (Idaho Ct. App. Nov. 7, 2022) (unpublished). The Idaho Court of Appeals rejected Goullette's arguments and affirmed his judgment of conviction. *See id.* Goullette then filed a petition for review, which this Court granted.

## II. ISSUES ON APPEAL

1. Whether the district court erred in accepting Goulette's *Alford* plea.
2. Whether the district court erred by failing to revisit the validity of Goullette's plea at sentencing given the information contained in the Skelton Report.

4

### III. ANALYSIS

Goullette's appeal raises two issues. First, Goullette argues that the district court erred in accepting his *Alford* plea without first inquiring further into the factual basis of his plea and making an express finding that a strong factual basis supported his plea. Second, Goullette argues that the district court erred at the sentencing hearing by failing to inquire further about the factual basis supporting his plea because the Skelton Report raised an obvious doubt about his guilt.

Goullette's arguments require us to examine *Alford* and our prior decisions interpreting it to determine whether the district court erred. For the reasons discussed below, to the extent our prior decisions have suggested that a trial court's obligation under *Alford* is only to determine that a strong factual basis exists for the plea, we now clarify those decisions. We conclude that *Alford* requires only that a trial court determine that a guilty plea is knowing, voluntary, and intelligent prior to accepting it. While determining that a strong factual basis exists may establish that a guilty plea is knowingly, voluntarily, and intelligently made despite protestations of factual innocence, it is not the only means of doing so. Applying this standard to Goullette's plea, we conclude that the record as a whole demonstrates that his plea was entered knowingly, voluntarily, and intelligently. We also find no error in the district court's failure at the sentencing hearing to reassess the validity of Goullette's plea after he filed an expert report that suggested he was not guilty of vehicular manslaughter.

### A. The district court did not err in accepting Goullette's *Alford* plea.

Goullette first argues that the district court erred in accepting his plea because the district court failed to independently verify that a strong factual basis supported his *Alford* plea. The State, as a preliminary matter, argues that Goullette invited any error by the district court.

*1. Goullette did not invite the purported error that he raises on appeal.*

"The invited error doctrine precludes a criminal defendant from 'consciously' inviting district court action and then successfully claiming those actions are erroneous on appeal." *State v. Abdullah*, 158 Idaho 386, 420, 348 P.3d 1, 35 (2015) (citing *State v. Owsley*, 105 Idaho 836, 837, 673 P.2d 436, 437 (1983)). Thus, "[t]he doctrine of invited error applies to estop a party from asserting an error when [the party's] own conduct induces the commission of the error." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 789, 526 P.3d 650, 660 (2023) (alteration in original) (citation omitted). "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to [take a certain action] from later challenging

that [action] on appeal." *Taylor v. McNichols*, 149 Idaho 826, 834, 243 P.3d 642, 650 (2010) (alterations in original) (citation omitted). "[A] failure to object is not enough to invoke the invited error doctrine[.]" *State v. Lankford*, 162 Idaho 477, 485, 399 P.3d 804, 812 (2017); *see also State v. Adamcik*, 152 Idaho 445, 477, 272 P.3d 417, 449 (2012) ("[W]e hold that Adamcik is not precluded by the invited error doctrine from raising this issue on appeal, as he did not encourage the district court to offer the specific malice instructions given, but merely failed to object.").

The State argues that Goullette invited the district court's alleged error because he agreed under oath that a sufficient factual basis supported his plea. The State contends that, at the very least, Goullette acquiesced in the alleged error by failing to object when the district court accepted his plea without conducting further inquiry into the factual basis for his plea. We disagree.

We are not persuaded that Goullette's agreement that there was a strong factual basis supporting his guilty plea played an important role in the district court's purported error. As we discuss below, the purpose of probing into the factual basis supporting an *Alford* plea is to determine whether the defendant's plea is knowing, voluntary, and intelligent. *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970). Applying the invited error doctrine when a defendant merely agrees that a strong factual basis exists would effectively eliminate *Alford*'s requirement that the trial court determine that a defendant's guilty plea is knowing, voluntary, and intelligent despite his protestations of innocence. In short, Goullette's agreement that a sufficient factual basis existed for his guilty plea did not obviate the trial court's obligation to determine that Goullette's plea was knowing, voluntary, and intelligent.

2.  *Alford requires a trial court to determine whether a defendant's guilty plea, made despite protestations of innocence, is knowing, voluntary, and intelligent.*

Goullette's appeal hinges on the legal standards governing a district court's decision to accept an *Alford* plea. Following oral argument, we ordered the parties to submit supplemental briefing on whether the record in this case demonstrates that Goullette's plea was knowing, voluntary, and intelligent. In addition to briefing that issue, the State argues in its supplemental brief that Goullette waived the issue of whether Goullette's plea was knowingly, voluntarily, and intelligently entered because Goullette failed to raise this issue in his opening brief. We disagree.

"We will not consider an issue not 'supported by argument and authority in the opening brief.'" *State v. Tower*, 170 Idaho 272, 276–77, 510 P.3d 625, 629–30 (2022) (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)). Thus, arguments not raised in a party's opening brief are waived. *State v. Kimbley*, 173 Idaho 149, 157, 539 P.3d 969, 977 (2023).

6

Goullette argues in his opening brief that the district court abused its discretion in accepting his *Alford* plea because the district court acted inconsistently with applicable legal standards. In doing so, Goullette squarely put at issue the legal standards applicable to the district court's decision to accept his *Alford* plea, including what *Alford* itself requires. Goullette has said enough to preserve the issue for appellate review.

Turning to the applicable legal standards, "[b]efore a trial court accepts a plea of guilty in a felony case, the record must show that the plea has been made knowingly, intelligently and voluntarily[.]" *State v. Carrasco*, 117 Idaho 295, 297–98, 787 P.2d 281, 283–84 (1990) (footnote and citation omitted). "[T]he validity of a plea is to be determined by considering all the relevant circumstances surrounding the plea as contained in the record." *Id.* (citation omitted). Whether a plea is knowing, voluntary, and intelligent generally involves inquiry into three areas:

> (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty.

*State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976); *see also* I.C.R. 11(c).

However, when a guilty plea is combined with a protestation of innocence, this Court has imposed an additional requirement. Relying on the United States Supreme Court's decision in *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court stated that, "[a]s long as there is a strong factual basis for the plea, and the defendant understands the charges against him, a voluntary plea of guilty may be accepted by the court despite a continuing claim by the defendant that he is innocent." *Sparrow v. State*, 102 Idaho 60, 61–62, 625 P.2d 414, 415–16 (1981) (citing *Alford*, 400 U.S. 25) (remaining citations omitted).

In *Alford*, the United States Supreme Court considered whether a court can constitutionally accept a guilty plea accompanied by a claim of innocence. *See* 400 U.S. at 32. Alford had been indicted for first-degree murder. *Id.* at 26. Despite maintaining his innocence, Alford claimed that he agreed to plead guilty to second-degree murder to avoid the death penalty. *Id.* at 27. Before accepting Alford's plea, the district court heard testimony from several witnesses that summarized the prosecution's case. *Id.* at 28–29. The Fourth Circuit Court of Appeals invalidated Alford's plea after concluding it was principally motivated by his desire to avoid the death penalty and was, therefore, involuntarily entered. *Id.* at 30.

The Supreme Court initially indicated that the Fourth Circuit failed to apply the proper legal standard, which "was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31. While acknowledging the inherent tension between claims of innocence and guilty pleas, the Supreme Court recognized that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37. This was true in Alford's case. *See id.* at 37–39.

The Supreme Court recognized that, although Alford claimed he was innocent, the state had a "strong" case of first-degree murder, evidence of which the state presented before the trial court accepted Alford's plea. *Id.* at 28–29, 37–38. The Supreme Court stated that "[w]hen [Alford's] plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned." *Id.* at 37–38 (footnote and internal citation omitted). Given Alford's clear desire to enter the plea and the factual basis supporting it, the Supreme Court concluded that the trial court did not commit constitutional error by accepting Alford's guilty plea. *Id.* at 37–38.

We have considered the holding from *Alford* on several occasions. In *State v. Birrueta*, we distinguished *Alford* because we ultimately concluded that Birrueta had not entered his plea knowingly, voluntarily, and intelligently. 98 Idaho 631, 570 P.2d 868 (1977). Our decision vacating the defendant's judgment of conviction did not turn on our application of *Alford*, but instead turned on the absence of evidence in the record demonstrating that the defendant understood the elements of the charge and the defenses available to him. *See id.*

As mentioned above, in *Sparrow*, we cited *Alford* for the proposition that, "[a]s long as there is a strong factual basis for the plea, and the defendant understands the charges against him, a voluntary plea of guilty may be accepted by the court despite a continuing claim by the defendant that he is innocent." *Sparrow*, 102 Idaho at 61, 625 P.2d at 415 (citing *Alford*, 400 U.S. 25) (remaining citations omitted). However, similar to our decision in *Birrueta*, our holding in *Sparrow* did not rely on our application of *Alford*, but instead on whether the defendant was adequately informed of the intent element of the crime prior to pleading guilty. *Id.* We concluded that he was and affirmed his judgment of conviction. *Id.* at 61, 625 P.2d at 415. We also recognized that there was a strong factual basis for the plea because the prosecutor recited the factual basis

supporting the charges against the defendant at his plea hearing, and the defendant's counsel agreed with the facts as stated. *Id.* at 61–62, 625 P.2d at 415–16.

In *State v. Coffin*, we stated that the district court was not "obliged" to establish that a strong factual basis existed at the defendant's plea hearing because the defendant had not maintained he was innocent at the time he entered his guilty plea. 104 Idaho 543, 546–47, 661 P.2d 328, 331–32 (1983). At his sentencing hearing, however, the defendant suggested that he was innocent. *Id.* at 547, 661 P.2d at 332. The district court provided the defendant with the opportunity to withdraw his plea, advised the defendant to consult with counsel, and recessed until the following day. *Id.* at 547–48, 661 P.2d at 332–33. The following day, the defendant reaffirmed his desire to plead guilty. *Id.* at 547, 661 P.2d at 332. We concluded that the defendant voluntarily and intelligently pleaded guilty after he was provided the opportunity to consult with counsel and withdraw his plea, and that he made a reasoned decision to continue with his guilty plea. *Id.* at 547–48, 661 P.2d at 332–33.

More recently, in *Schoger v. State*, we stated that *Alford* stood for the proposition that "such a plea is constitutionally permissible so long as the charge is supported by a strong factual basis." 148 Idaho 622, 628, 226 P.3d 1269, 1275 (2010). We held that Idaho trial courts possess "wide discretion in determining whether a strong factual basis exists for the plea." *Id.* We concluded that the district court properly recognized it had to make a discretionary determination concerning whether a strong factual basis existed to support the plea, that it asked questions pertinent to making that determination, and that it had reasonable reservations concerning whether a sufficient factual basis existed to support the charge. *Id.* As a result, we affirmed the district court's decision rejecting the plea because it correctly perceived the issue as one of discretion and reasonably acted within the bounds of that discretion. *Id.* at 628–29, 226 P.3d at 1275–76.

Goullette argues that the trial court erred in accepting his guilty plea because it failed to make a sufficient inquiry concerning whether a strong factual basis supported the two charges and instead simply relied on Goullette's short "yes, ma'am" response to the district court's question whether he believed a strong factual basis existed to support his guilty plea. Goullette contends that this Court's holdings and *Alford* require that the district court do more. However, a close reading of *Alford* indicates that it only requires the trial court to determine whether the guilty plea is made knowingly, voluntarily, and intelligently. The existence of a strong factual basis to support the charge is but one way of satisfying that inquiry.

Although the holding in *Alford* relies heavily on the trial court's receipt of evidence establishing a strong factual basis for the charge, nowhere does the Supreme Court state that a strong factual basis is a constitutional necessity. The Fourth Circuit had held that Alford's plea was involuntary because his principal motivation was fear of the death penalty. *Alford*, 400 U.S. at 30. The Supreme Court began its analysis by reviewing *State v. Jackson*, 390 U.S. 570 (1968), a Supreme Court decision on which the Fourth Circuit "heavily relied," and noted that *Jackson* did not establish a new test for determining the validity of guilty pleas. The Supreme Court stated, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. In light of this, the Supreme Court stated that the fact that Alford would not have pleaded guilty except to limit the possible penalty did not necessarily demonstrate that the guilty plea "was not the product of a free and rational choice," especially where Alford was represented by competent counsel who advised that the plea would be to Alford's advantage. *Id.*

The Supreme Court next recognized that state and federal courts were divided on "whether a guilty plea can be accepted when it is accompanied by protestations of innocence and hence contains only a waiver of trial but no admission of guilt." *Id.* at 33. The Supreme Court recognized that a defendant may have other valid reasons to plead guilty, despite his factual innocence:

> Some courts, giving expression to the principle that '(o)ur law only authorizes a conviction where guilt is shown,' require that trial judges reject such pleas. But others have concluded that they should not 'force any defense on a defendant in a criminal case,' particularly when advancement of the defense might 'end in disaster . . . .' They have argued that, since 'guilt, or the degree of guilt, is at times uncertain and elusive,' '(a)n accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty . . . .' As one state court observed nearly a century ago, '(r)easons other than the fact that he is guilty may induce a defendant to so plead, . . . (and) (h)e must be permitted to judge for himself in this respect.'

*Id.* at 33–34 (alterations in original) (internal citations omitted). The Supreme Court acknowledged that "[t]his Court has not confronted this precise issue, but prior decisions do yield relevant principles." *Id.* at 34.

The Supreme Court then discussed several decisions that it believed were relevant to assessing the validity of Alford's guilty plea. In one decision, the Supreme Court recognized it had implied that there would be no constitutional error in accepting a guilty plea despite the existence of evidence supporting a valid defense. *Id.* at 34–35 (discussing *Lynch v. Overholser*, 369 U.S.

705 (1962)). It also considered its decisions holding that a trial court has power to impose a prison sentence after accepting a plea of nolo contendere. *Id.* at 35–36 (discussing, among other cases, *Hudson v. United States*, 272 U.S. 451 (1926)). A defendant who makes a plea of nolo contendere does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court to treat him as if he were guilty. *Id.* at 36. After considering these cases, the Supreme Court determined that the principle implicit in the nolo contendere cases is that the U.S. Constitution does not bar the imposition of a prison sentence upon a defendant who is unwilling to admit guilt, but who, faced with grim alternatives, is willing to waive his trial and accept the sentence. *Id.* at 36–37.

Turning to Alford's guilty plea, the Supreme Court held that the fact that Alford pleaded guilty instead of nolo contendere was "of no constitutional significance with respect to the issue now before us[.]" *Id.* at 37. The Supreme Court stated that an express admission of guilt is not a constitutional prerequisite to the imposition of a criminal penalty: "[a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* With regard to Alford's plea specifically, the Supreme Court concluded that it could not "perceive any material difference between a plea refusing to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.*

The Supreme Court discussed the strong evidence of actual guilt in the context of assessing whether Alford's plea was made knowingly, voluntarily, and intelligently: "When [Alford's] plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned." *Id.* at 37–38 (footnote omitted) (internal citation omitted). The Supreme Court did not only consider the strong evidence supporting the charge, however. It also considered Alford's clearly expressed desire to enter the plea despite his professed belief in his innocence. *Id.* After considering both of those factors, the Supreme Court held that the trial court did not commit constitutional error in accepting the plea. *Id.* at 38. The Supreme Court ended its opinion by observing that "[t]he prohibitions against

11

involuntary or unintelligent pleas should not be relaxed, but neither should an exercise in arid logic render those constitutional guarantees counterproductive[.]" *Id.* at 39.

A close reading of the *Alford* decision reveals that the Supreme Court was primarily concerned with ensuring a guilty plea is knowingly, voluntarily, and intelligently entered. While it relied in part on the strong factual basis supporting the charge against Alford, that was not the only basis for its decision holding there was no error in accepting the plea. It also relied on Alford's express statements that he wished to avoid the death penalty. At no point did the Supreme Court state that an *Alford* plea could only be accepted if there was a strong factual basis to support the charge. Further, in its concluding statements, the Supreme Court noted that the constitutional prohibition against "involuntary or unintelligent" pleas should not be relaxed. We are unable to ascertain any constitutional principles announced in *Alford* that limit our trial courts to only accepting *Alford* pleas when a "strong factual basis" exists to support the charge. Instead, our trial courts may constitutionally accept an *Alford* plea after determining the defendant made a knowing, voluntary, and intelligent decision to plead guilty despite his protestations of innocence.

We are not alone in our analysis of *Alford*'s holding. Appellate courts in the federal system and at least one of our sister states have similarly concluded that *Alford* does not mandate that a guilty plea made despite protestations of innocence can only be accepted when the trial court determines that a "strong factual basis" for the plea exists. *See Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975) ("Alford held that there is no constitutional bar to accepting a guilty plea in the face of an assertion of innocence, so long as a defendant voluntarily, knowingly, and understandingly consents to be sentenced on a charge. This being the rule, there is no constitutional requirement that a trial judge inquire into the factual basis of a plea."); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("Only when a defendant proclaims his innocence while pleading guilty have federal courts required a judicial finding of some factual basis for the plea as an essential part of the constitutionally required finding that the plea was voluntary. Even in these cases, the purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction. Rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily." (internal citations omitted)); *Higgason v. Clark*, 984 F.2d 203, 207 (7th Cir. 1993) ("*Alford* tells us that strong evidence on the record can show that a plea is voluntary; it does not hold that *only* strong evidence on the record permits a finding of voluntariness. And it certainly does not imply that the factual-basis requirement of Fed.R.Crim.P.

11(f) and its state-law counterparts comes from the Constitution."); *Medina v. People*, 535 P.3d 82, 90 (Colo. 2023) ("[Whether] a guilty plea is voluntary, knowing, and intelligent necessarily depends on the circumstances of each case. While a defendant's choice to plead guilty may be influenced by the factual basis for the charge, it may equally be influenced by other considerations. For instance, by pleading guilty to [a charge, the defendant is] able to achieve the global disposition of several other criminal cases for which he had no defense."), *cert. denied sub nom. Medina v. Colorado*, No. 23-618, 2024 WL 1607756 (U.S. Apr. 15, 2024) (mem.).

Our decision today should not be read to suggest that the ordinary plea colloquy used when accepting a guilty plea automatically establishes that an *Alford* plea was knowingly, voluntarily, and intelligently made. The validity of a guilty plea "is to be determined by considering all the relevant circumstances surrounding the plea as contained in the record." *State v. Carrasco*, 117 Idaho 295, 297–98, 787 P.2d 281, 283–84 (1990) (citation omitted). An assertion of innocence is certainly a relevant circumstance when assessing whether a defendant entered a knowing, voluntary, and intelligent plea and the record should, therefore, reveal why pleading guilty was "a voluntary and intelligent choice among the alternative courses of action open to the defendant" despite the defendant's assertion of innocence. *Alford*, 400 U.S. at 31.

Our decision today simply holds that, while the factual basis supporting a defendant's *Alford* plea is one way to evaluate whether the plea was knowing, voluntary, and intelligent, it is not the exclusive means of doing so. *See id.* at 31–39. To the extent that our decisions in prior cases, including *Sparrow* and *Schoger*, suggest that our trial courts may not accept an *Alford* plea without first concluding that a strong factual basis exists to support the plea, those portions of our prior decisions are abrogated. A trial court's decision whether to accept an *Alford* plea is a discretionary one and we leave it to our trial courts to make that decision after having considered "all the relevant circumstances surrounding the plea as contained in the record." *Carrasco*, 117 Idaho at 297–98, 787 P.2d at 283–84 (citation omitted).

Having clarified the standards applicable to accepting *Alford* pleas, we now turn to the specific circumstances of Goullette's guilty plea.

3. *The record as a whole demonstrates that Goullette's guilty plea was knowing, voluntary, and intelligent.*

The parties focus their arguments on the district court's colloquy with Goullette at his change of plea hearing and whether there was a sufficient factual basis to support Goullette's guilty plea. Goullette argues that the district court erred by failing to independently inquire into the

evidence supporting the charges against him prior to finding that a strong factual basis supported his guilty plea. The State argues that we should affirm the district court because the information ascertained by the district court at Goullette's change of plea hearing established that a strong factual basis supported his plea. However, if we conclude that the evidence adduced at the change of plea hearing was insufficient, the State argues that we should review other documents in the record to independently evaluate the strength of the State's case against Goullette.

At Goullette's change of plea hearing, the only mention of a "factual basis" in the district court's plea colloquy was when the district court explained to Goullette that, by entering an *Alford* plea, he was agreeing that there is a strong factual basis to support his plea. The district court then coupled this explanation with a question to Goullette concerning whether he wanted to enter the plea to take advantage of an offer that the State made to resolve other pending criminal cases against him:

> Q. [District Court] And you're entering what's called an Alford plea. An Alford plea, by doing this you're agreeing that there's a strong factual basis to support a guilty plea.
>
> And you're asking the [c]ourt to enter the plea for you so that you can take advantage of the offer that the [S]tate has made in all of your pending cases, is that true?
>
> A. [Goullette] Yes, ma'am.

Shortly thereafter, the district court indicated that it would accept Goullette's guilty pleas and "enter them pursuant to the North Carolina versus Alford decision, find that they are knowingly and voluntarily made with a full understanding of the potential consequences."

"For a guilty plea to be valid, the entire record must demonstrate that the plea was entered into in a voluntary, knowing, and intelligent manner." *Workman v. State*, 144 Idaho 518, 527, 164 P.3d 798, 807 (2007) (citation omitted). This requires us to conduct a de novo review of the record to determine whether it demonstrates that Goullette's plea was voluntarily, knowingly, and intelligently made. We begin our analysis by reviewing Goullette's signed guilty plea advisory form and the district court's colloquy with Goullette at the change of plea hearing.

On the same day as the change of plea hearing, Goullette signed a guilty plea advisory form and a form entitled "Acknowledgement of Alford Plea." Both forms were filed with the district court at the time of the change of plea hearing. In the guilty plea advisory form, Goullette indicated he had no difficulty understanding what he was doing by filling out the form and that there was no reason why he could not make a reasoned and informed decision in the case. He acknowledged

14

that by pleading guilty he was waiving certain constitutional rights, including giving up legal and factual defenses that he may have and giving up his right to force the State to prove him guilty beyond a reasonable doubt. He indicated that he had sufficient time to discuss the case with his attorney, had been given adequate time to fill out the form, and had adequate access to his attorney's assistance in filling out the form. He acknowledged that he understood that no one could force him to plead guilty and that he was satisfied with his attorney's representation. He affirmed that the answers throughout the form were his own, that he was entering the guilty plea freely and voluntarily, that he was not admitting to all of the elements of the crime to which he was pleading guilty, and that he understood the consequences of entering a guilty plea.

In signing the guilty plea advisory form, Goullette also affirmed that his plea was the result of a plea agreement. On the advisory form, Goullette initialed the following description of the plea agreement: "The Defendant shall plead guilty to Count I and Count II of the Information via an Alford Plea . . . [and] [t]he Defendant and the State are free to argue." However, while a plea agreement is attached to the advisory form, the agreement raises several concerns regarding whether Goullette's plea was made knowingly, voluntarily, and intelligently.

First, Goullette answered "no" to the question, "[i]f a written plea agreement was done, have you read this plea agreement?" Yet Goullette had signed the plea agreement attached to the guilty plea advisory form. Second, the title of the written plea agreement attached to the guilty plea advisory form does not include the district court case number for the case before us on appeal. Rather, it only includes the case numbers for three other cases. The record suggests that the plea agreement resolved the three other cases and also the one presently before us. But the plea agreement's only reference to the case currently before us is a statement that the State will recommend that the sentences imposed in the other cases will run consecutively to the sentences imposed in this case. Third, Goullette's signature on the written plea agreement appears immediately below a statement that Goullette acknowledged he was waiving his right to appeal his conviction and sentence. However, on the guilty plea advisory form in this case, Goullette indicated that he did not waive his right to appeal his conviction or his sentence. The district court did not question Goullette concerning any of these discrepancies during its plea colloquy. However, we also note that Goullette has not raised these discrepancies on appeal, nor has he argued that they establish that his plea was not knowingly, voluntarily, and intelligently made.

15

Prior to the change of plea hearing, Goullette also signed a form entitled "Acknowledgement of Alford Plea." In that form, he affirmed that, in order for the district court to accept his plea, he understood the district court would have to make certain findings before accepting the plea, including that a strong factual basis existed to support the plea and that the plea was made voluntarily, knowingly, and understandingly. Goullette also affirmed that he understood that the district court would not accept the plea unless the court determined that the guilty plea was a voluntary and an intelligent choice among the alternatives available to him. He acknowledged that, even though he was not admitting he committed all the elements of the offenses to which he pleaded guilty, the district court would, upon entry of his guilty plea, make a finding that he was guilty.

At the change of plea hearing, the district court questioned Goullette under oath concerning the plea. The district court confirmed with Goullette that he would be entering an *Alford* plea to both counts and that there was no agreement concerning the sentence he would receive. The State indicated that it would be seeking the maximum sentence and Goullette's attorney stated that there was an agreement that Goullette's sentence in the case would run concurrently with the sentences in his other cases. The district court advised Goullette of the maximum penalties associated with each charge. In response to questioning from the district court, Goullette confirmed that he understood the maximum penalties, that the State would be seeking a sentence of ten years, that Goullette was free to argue for any sentence, and that the district court would determine what sentence to impose.

During the plea colloquy, Goullette confirmed that the State had agreed to dismiss some other cases and he would be entering pleas in other cases. He also affirmed that no one had done anything to force him to enter into the plea agreement. The district court explained to Goullette that, by entering an *Alford* plea, Goullette agreed there was a strong factual basis to support the guilty plea. The district court then asked Goullette if he was asking the district court to accept his *Alford* plea so he could take advantage of the State's offer that related to all of his pending cases. Goullette responded affirmatively. The district court then advised Goullette that, even though he was entering an *Alford* plea, the district court would sentence him as if he had pleaded guilty. Goullette stated he understood. The district court then found that Goullette's guilty pleas to both charges were made knowingly, voluntarily, and intelligently and accepted both pleas.

The foregoing is the sum total of the evidence expressly elicited at the change of plea hearing relating to whether Goullette made his guilty pleas knowingly, voluntarily, and intelligently. The State did not present any evidence at the change of plea hearing concerning the underlying facts of the case, and the district court did not discuss specific facts supporting the charges against Goullette.

The State argues that the court minutes of Goullette's probable cause and preliminary hearings establish that a strong factual basis existed to support the charges. However, the transcripts of these hearings are not in the record. Although the court minutes give an overview of the witness testimony and evidence the State presented, court minutes are not sworn testimony and do not provide the same detail as transcripts. Neither party argues on appeal, however, that the court minutes of these hearings are inaccurate. Therefore, we will assess the factual basis supporting Goullette's *Alford* plea by reviewing the court minutes from his probable cause and preliminary hearings.

The court minutes from Goullette's probable cause hearing are brief. The prosecutor summarized the State's case against Goullette but did not present any witnesses. According to the court minutes, the prosecutor stated that Goullette was travelling southbound on McGee Road at a high rate of speed while the victims were walking with their backs to oncoming traffic in the southbound lane. A witness statement indicated that Goullette was distracted and not looking at the road when she drove past his vehicle in the northbound lane. The prosecutor stated that investigators determined Goullette was travelling at approximately forty-three miles per hour just before the collision and approximately thirty-five miles per hour at the estimated point of impact. The magistrate judge concluded that there was probable cause to charge Goullette with vehicular manslaughter and reckless driving.

The court minutes from Goullette's preliminary hearing are more detailed and indicate that five witnesses testified at the hearing. The surviving victim, Updike, testified first and explained that she and the deceased victim, Stelzer, went for a walk on McGee Road during their lunch break. At some point on their return trip, the victims crossed over into the southbound lane to avoid a car travelling in the northbound lane. Updike testified that sometime thereafter she and Stelzer were struck from behind by Goullette. She remembered violently spinning around after she was hit and then landing on the ground, followed by Goullette running over to her.

17

The second witness, a resident living on McGee Road, testified that she saw Goullette travelling down McGee Road at a high rate of speed.

The third witness, Stone, was traveling northbound on McGee Road at the time of the accident. Stone testified that she saw Updike and Stelzer walking south on McGee Road in the southbound lane. She also saw Goullette rapidly driving south on McGee Road further north. As she passed Goullette, Stone witnessed Goullette's vehicle cross over the center line and testified that Goullette was not looking at the roadway.

The fourth witness, Officer Werger, arrived on scene after the collision. He testified that it was a clear day and there were no obstructions on McGee Road. Werger also testified to several statements Goullette made after the collision. Goullette admitted that he hit the victims and that he had previously seen the victims walking when he was traveling northbound on McGee Road. Werger also testified that Goullette admitted he was distracted shortly before the collision because he was looking at his child in the backseat and, when he turned back around, the victims were right in front of his vehicle.

The fifth and final witness was the State's expert accident reconstructionist, Officer Ashby. Ashby concluded that Goullette was traveling at approximately forty-three miles per hour when he began braking eighty to ninety feet before the collision. Ashby concluded that Goullette was traveling approximately thirty-five miles per hour at the point of impact. Ashby testified that he used evidence gathered from the scene, such as the braking skid mark, evidence on the roadway, and Goullette's vehicle, to calculate Goullette's approximate speed and the estimated point of impact. Ashby testified that he calculated Goullette's speed at thirty-five miles per hour at the point of impact. The speed limit on that portion of the roadway was twenty-five miles per hour.

Goullette contends that the expert report he filed prior to sentencing undercuts the evidence presented at the preliminary hearing. The report was prepared by William Skelton, an engineer with experience in accident reconstruction. The Skelton Report alleged that Ashby's accident reconstruction was flawed and opined that Goullette's speed at the point of impact was 26.5 miles per hour rather than 35 miles per hour. Skelton's report also opined that Goullette did not have sufficient reaction time to avoid hitting the victims and that the victims were in violation of Idaho law at the time of impact because they were walking on the wrong side of the road. While the Skelton Report contests certain aspects of the State's case, it does not contest the eyewitness

testimony provided by the other witnesses at the preliminary hearing, nor does it contest Goullette's admissions to law enforcement at the scene shortly after the collision.

In assessing whether Goullette's guilty plea was knowing, voluntary, and intelligent, we also consider the record as a whole. *Workman v. State*, 144 Idaho 518, 527–28, 164 P.3d 798, 807–08 (2007). After reviewing the entire record before us, we conclude that there is sufficient evidence to establish that Goullette's guilty plea to vehicular manslaughter was made knowingly, voluntarily, and intelligently despite his protestations of innocence. The court minutes of the preliminary hearing reflect a strong factual basis to support the charge. Goullette admitted to law enforcement that he hit the women; that he had seen them walking along the roadway before the accident; and that immediately before he hit the women, he was not looking at the road but instead was turned around looking at his son who was in the backseat of the car. Other witnesses testified to seeing Goullette shortly before the accident speeding down the road, crossing the center line of the roadway, and not looking at the road. At the change of plea hearing, Goullette advised the district court that he was pleading guilty to take advantage of a deal from the State that would resolve his other pending criminal charges. On the guilty plea advisory form, Goullette affirmed that he had sufficient time to consult with his attorney, that he understood he was waiving his right to force the State to prove him guilty beyond a reasonable doubt, and that he was aware of the consequences of his plea. Goullette then confirmed at his change of plea hearing that he read and understood the guilty plea advisory form. Further, while we have noted apparent discrepancies between the plea agreement attached to the guilty plea advisory form and the answers that Goullette provided on the advisory form, Goullette has not argued those discrepancies on appeal. We conclude that the confusion arising from those discrepancies does not override the other evidence in the record indicating that Goullette made the guilty plea knowingly, voluntarily, and intelligently. We therefore affirm the district court's decision to accept Goullette's *Alford* plea in this case.

However, this case presents a close call. Our decision should not be read as an endorsement of the district court's process in accepting Goullette's *Alford* plea. Although we review the entire record to determine whether a plea is entered knowingly, voluntarily, and intelligently, the most effective way to create a record that demonstrates a plea is entered knowingly, voluntarily, and intelligently is through the plea colloquy with the defendant. While the court minutes, guilty plea advisory form, and acknowledgement of *Alford* plea form tipped the balance in favor of finding

19

that Goullette's guilty plea was constitutionally sufficient in this case, the best practice for accepting an *Alford* plea would be to ensure the plea colloquy reveals why pleading guilty "was a voluntary and intelligent choice among the alternative courses of action open to the defendant" despite the defendant's assertion of innocence. *Alford*, 400 U.S. at 31.

**B. The district court did not err when it failed to reassess the constitutionality of Goullette's *Alford* plea at the sentencing hearing.**

Goullette argues that the district court was obligated to re-inquire into the factual basis of his plea at sentencing because the Skelton Report and his attorney's statements at sentencing raised obvious doubt as to his guilt, which triggered the district court's duty to inquire into the factual basis supporting his plea. Goullette contends the district court erred because it did not conduct this inquiry.

The State argues that the Skelton Report and Goullette's attorney's statements at sentencing did not raise an obvious doubt as to Goullette's guilt, so the district court was under no obligation to inquire into the factual basis for Goullette's plea. The State also argues that Goullette failed to preserve this argument because he did not argue at sentencing that there was obvious doubt as to his guilt.

1. *Goullette preserved his argument that the Skelton Report raised an obvious doubt as to his guilt requiring the district court to revisit the validity of his plea at sentencing.*

"Issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Foeller*, 168 Idaho 884, 891, 489 P.3d 795, 802 (2021) (citation omitted). Accordingly, "both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal." *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). However, "[t]his Court has acknowledged that arguments may 'evolve' on appeal." *Foeller*, 168 Idaho at 891, 489 P.3d at 802 (citation omitted). "In fact, we fully expect counsel to refocus and sharpen their arguments when they bring an appeal to this Court." *Id.*

Goullette preserved this issue for appeal. Goullette consistently maintained the position below that he did not act with gross negligence, including at his sentencing hearing. Goullette's attorney even referenced the Skelton Report to support his opinion that Goullette was not grossly negligent. It is true that Goullette did not specifically argue that the Skelton Report raised an obvious doubt as to his guilt. However, Goullette consistently argued below that he did not act with gross negligence, and he submitted evidence in advance of his sentencing hearing to support

that position. This was sufficient to preserve the issue of whether the Skelton Report raised an obvious doubt as to Goullette's guilt requiring the district court to revisit the validity of Goullette's plea.

   2.  *The Skelton Report did not raise obvious doubt as to Goullette's guilt.*

A trial court should revisit the validity of a plea or allow the defendant to plead anew if presented with evidence raising obvious doubt as to guilt after the plea is entered but before sentencing. *See State v. Coffin*, 104 Idaho 543, 545 n.2, 661 P.2d 328, 330 n.2. The district court did not err by failing to revisit the validity of Goullette's plea at sentencing because the Skelton Report and Goullette's attorney's statements at sentencing did not raise obvious doubt as to Goullette's guilt.

As previously discussed, the Skelton Report contains several conclusions that dispute some, but not all, of the State's evidence. Skelton presented an alternative theory that questioned law enforcement's reliance on the distance between the point of impact and the final resting spot of one of the victim's bodies, which Skelton concluded was inaccurate for purposes of calculating Goullette's speed. Skelton opined that Goullette's approximate speed at the estimated point of impact was 26.5 miles per hour. Skelton also concluded that Goullette did not have enough time to avoid the victims and that the victims were not in compliance with Idaho law because they were walking on the wrong side of the road.

Although the Skelton Report contests some of the State's evidence, it does not contest the eyewitness testimony provided by witnesses at Goullette's preliminary hearing that Goullette was driving very fast shortly before the collision. The Skelton Report also does not contest the evidence that Goullette was not looking at the road while he was driving, including Stone's observations and Goullette's own admissions to law enforcement. Goullette further admitted to law enforcement that he saw the victims as he passed them traveling northbound on McGee Road, which the Skelton Report does not refute. Accordingly, while the Skelton Report may have supported an argument at trial that Goullette did not act with gross negligence, it falls short of raising obvious doubt as to that element and, therefore, does not raise obvious doubt as to Goullette's guilt.

Goullette's attorney's statements also do not raise obvious doubt as to his guilt for the same reasons. As previously discussed, Goullette's attorney argued at the sentencing hearing that Goullette was not grossly negligent. However, that argument was based on the Skelton Report's conclusions. Because the Skelton Report does not raise obvious doubt as to Goullette's guilt, it

follows that Goullette's attorney's opinion based on that report also does not raise obvious doubt. Accordingly, the district court did not err by failing to revisit the validity of Goullette's plea at sentencing.

## IV.  CONCLUSION

For the reasons discussed herein, we affirm Goullette's judgment of conviction.

Chief Justice BEVAN, Justices BRODY and MOELLER, and Pro Tem Justice SCHROEDER CONCUR.